642 So.2d 115 (1994)
Hugh T. HANDLEY, Public Guardian, Second Judicial Circuit of Florida, Guardian, et al., Appellants,
v.
Britton B. DENNIS, Administrator of Florida State Hospital and Nancy Daniels, Public Defender, Second Judicial Circuit of Florida, Appellees.
No. 93-498.
District Court of Appeal of Florida, First District.
September 8, 1994.
Hugh T. Handley, Tallahassee, for appellants.
M. Gene Stephens, Asst. Hospital Legal Counsel, Chattahoochee, and Nancy A. Daniels, Public Defender, Marcia Wieder, Asst. Public Defender, Tallahassee, for appellees.
PER CURIAM.
Appellant, the public guardian for the Second Judicial Circuit, appeals a final judgment which denied his complaint for injunctive and declaratory relief. We affirm.
As noted, appellant is the public guardian appointed under Chapter 744, Florida Statutes. Several of appellant's wards have been placed at Florida State Hospital (FSH) at Chattahoochee pursuant to the Baker Act, Chapter 394, Florida Statutes. Persons placed at FSH fall under the jurisdiction of the Florida Department of Health and Rehabilitative Services (HRS), and under the statutory scheme, HRS is required to demonstrate a continued basis for involuntary placement. A review of this involuntary placement of a patient is undertaken every six months, and the public defender is charged with representing an indigent patient during this process. §§ 395.467(4)(e) and 27.51(1)(d), Fla. Stat.
Appellant filed his complaint in the circuit court when the administrator of FSH, Britton Dennis, sought to place certain wards housed at FSH in a "less restrictive facility." According to the appellant, the public defender acquiesced in this attempt. In addition to asking for an injunction prohibiting placement of his wards outside FSH without his explicit approval, appellant sought a declaratory judgment finding that the public guardian was required to be consulted on a transfer of a patient from FSH to a less restrictive environment.
After receiving argument of counsel, the lower court declined to grant injunctive relief. In so doing, the lower court issued a detailed final judgment outlining the applicable statutory provisions, which we quote in full (omitting formal parts):
STATEMENT OF THE CASE
This is an action by the Public Guardian of the Second Judicial Circuit for an injunction against the Administrator of the *116 Florida State Hospital and the Public Defender for the Second Judicial Circuit. In the demand for relief, the Public Guardian seeks to enjoin the Administrator and Public Defender from "attempting to place or transport any patient who is a ward of the Public Guardian" to a facility that is located outside the jurisdiction of this court.
The Administrator of Florida State Hospital filed an answer and affirmative defenses, and a counterclaim for a declaratory judgment. In the counterclaim, the Administrator seeks a declaration that the Public Guardian has a "duty to cooperate in the transfer of the ward" when the ward no longer meets the test of involuntary commitment and must be placed in less restrictive environment.[1] The Public Defender contends that the proposed injunction would interfere with her duty to provide independent legal representation to Baker Act patients.
The case was set for a final hearing, but it was clear by the time of the hearing that there was no real dispute of fact. Several of the parties gave testimony about how they perceived their roles in the system. Some evidence was also presented regarding the suitability of the alternative placement programs, but that evidence is immaterial to the resolution of the controversy.
The primary issue is an issue of law arising from a conflict between the authority of the Administrator under the Baker Act and the authority of the Public Guardian under the Guardianship Law. To resolve this conflict, the court must also resolve another issue regarding the role of the Public Defender in hearings under the Baker Act.
ANALYSIS
The State's power to order the involuntary civil commitment of a mental patient is limited by the constitutional rights of the patient, O'Connor v. Donaldson, 422 U.S. 563 [95 S.Ct. 2486, 45 L.Ed.2d 396] (1975), as well as the statutory procedures established by the Baker Act. If the patient does not meet the criteria for involuntary placement, as set forth in § 394.467(1) Fla. Stat. (1991), then the Administrator has no authority to hold that patient in the hospital.
Even if the State can initially establish the criteria for involuntary placement, the patient has a right to a periodic review of his or her medical condition, and the burden remains on the State to show that there is a continued need for involuntary placement. Under the provisions of the Baker Act, these reviews are conducted by a hearing officer assigned by the Division of Administrative Hearings. § 394.467(4) Fla. Stat. (1991). A patient who cannot afford to retain counsel has a right to be represented by an appointed lawyer in the hearing on the review. § 394.467(4)(e) Fla. Stat. (1991). The hearing is conducted as a formal hearing under § 120.57(1) of the Florida Administrative Procedure Act, and the final decision on the need for continued involuntary placement is reviewable by appeal.
One of the findings that must be made to support an order of involuntary placement in a state mental hospital is that "all available less restrictive treatment alternatives which would offer an opportunity for improvement ... have been judged to be inappropriate." § 394.467(1)(b) Fla. Stat. (1991). The state must be able to support this finding when the patient is first committed and all times during the course of the patient's commitment. If a patient improves and is able to function in an "available less restrictive environment" then the State has no alternative but to place the patient in that environment. To do otherwise, would violate the constitutional rights of the patient as well as the plain requirements of the Baker Act.
The Public Defender has a duty under the law to represent indigent mental patients in hearings to determine the need for continued involuntary placement. § 394.467(4)(e) and § 27.51(1)(d) Fla. Stat. (1991). In such cases, the duty of the Public Defender is a legal and professional duty that is owed to the patient as a client. The Public Defender *117 serves as an independent advocate for the patient, not as a neutral party charged with the responsibility of determining the best interests of the patient or the needs of society.
If a patient could be transferred to a less restrictive environment, and if the program that offers the less restrictive environment is outside the Second Judicial Circuit, then the Public Defender must advocate that the patient be transferred to a place outside the circuit. Nothing in the guardianship law can change this obligation the Public Defender has to her client.
An adjudication of incapacity under the Guardianship Law, may have the effect of removing certain legal rights the ward would otherwise be able to exercise. Some of these rights may be delegated to the guardian, among them the right "to determine [the ward's] residence." § 744.3215(3)(e) Fla. Stat. (1991). As the Public Guardian contends, the law plainly requires a guardian to obtain an order of the court before approving a change in the ward's residence. If the guardian has retained the power to determine the residency of the ward, § 744.2025 requires the guardian to "petition the court" for authority to change the ward's residence "from one county of the state to another."
As the controversy in this case so clearly demonstrates, these laws can set [a] collision course between various public officials each of whom is charged with a separate duty. The Baker Act gives the hospital the right to select alternative placements and establishes a duty on the part of the hospital to release a patient to an appropriate "less restrictive" facility. This duty does not change if the facility is outside the Second Judicial Circuit. Many of the patients in the State Hospital were committed from other locations in the State and it is reasonable to expect that they will, once again, assume a new residence when they are released or transferred to a less restrictive facility. If the patient wishes to be released or transferred and if there is a basis for that request, the Public Defender has a duty to advocate the cause of the patient.
If the patient has become the subject of an adjudication of incapacity while in the State Hospital, there will also be a guardianship case pending in this Judicial Circuit. If the Administrator attempts to transfer a patient (or if the hearing officer orders a transfer) the Public Guardian then has a duty to seek court approval in the guardianship case to change the residence of the ward. If the guardian does not approve of the proposed placement, then it is conceivable that the guardian could decline to request a change in the ward's residence. As an extreme, a guardian could even attempt to use the residency provisions of the guardianship law to block a transfer the guardian did not approve.
All of this suggests that it might be impossible to comply with both the Baker Act and the Guardianship Laws if the ward is a recovering Baker Act patient who is about to be transferred to a medical facility that is outside the jurisdiction of the guardianship court. However, the Court has concluded that if there is a conflict in these laws, both the duty of the guardian and the power of the circuit court in the guardianship proceeding must give way to the ward's right under the Baker Act to be released to a less restrictive environment. While the circuit court has authority to approve or disapprove a plan to change the residence of a ward, that authority could never be used to interfere with a patient's right to be released or transferred from involuntary confinement in a mental hospital. For this reason, the court has concluded that § 744.2025 Fla. Stat. (1991) and all other provisions of the guardianship law regarding the residence of the ward, are inapplicable to Baker Act patients. A ward who has been involuntarily committed to a state hospital need not obtain the approval of the circuit court for a change of residence to effectuate a plan of release.
The Court recognizes that the Public Guardian of the Second Judicial Circuit has no duty to serve a ward who is living outside the circuit. Therefore, if a ward must be moved to a facility outside the circuit to accommodate a ruling in a Baker *118 Act proceeding, the Public Guardian need only file a motion to withdraw and a motion to transfer the guardianship case to the appropriate circuit. The court may then allow the guardian to withdraw and defer the choice of new guardian to the circuit judge in the circuit to which the ward has been transferred.
The court also recognizes that Public Guardians do not exist in every judicial circuit and that there may not be suitable guardians who are willing to serve the interests of the ward in the transferee court. Under the guardianship law, however, the court has an affirmative duty to appoint a successor guardian when a guardian is allowed to withdraw. The court cannot simply decline to appoint a successor guardian because that would take away the ward's legal representative without restoring the legal disabilities imposed by the original finding of incapacity.
Although the problems that are associated with the movement of a ward between jurisdictions are difficult, they must not stand in the way of a release from involuntary confinement. A circuit judge in the transferee court will have to find a way to insure that a proper successor guardian is appointed.
CONCLUSION
In summary, the court concludes that a liberty interest asserted on behalf of an involuntary mental patient in a Baker Act hearing is superior to any conflicting right that could be asserted on behalf of the patient under the guardianship laws. Therefore, a state administrative hearing officer can order the release or transfer of a patient in a hearing under § 394.467(4) over the objection of the Public Guardian. Likewise, the Public Defender may argue for the release [or] transfer of a Baker Act patient even if that is not the wish of the patient's guardian. For these reasons, the request for an injunction is denied.
(Footnote in original).
Despite the zealous and impressive efforts of the appellant on behalf of his wards, we are not persuaded that the lower court erred in making the above findings of facts or conclusions of law. We cannot disagree with appellant's factual assertion that certain wards may be better served at FSH than in other facilities, even though the latter may be deemed to be less-restrictive under the statutory framework. We certainly agree with the appellant that it is essential that wards removed from the Second Judicial Circuit should be guaranteed that a successor public guardian is appointed upon transfer to ensure that the wards' best interests are being monitored at all times. By assuming jurisdiction over citizens pursuant to Chapter 744, the State of Florida bears a great responsibility to ensure that these persons are adequately cared for. Nevertheless, the essential relief which appellant requests is not available on the record before us in this case. We cannot agree that under the statutory scheme so well documented by the lower court that the public guardian has the authority to prevent transfer from FSH to a less-restrictive setting.
Accordingly, the order under review is AFFIRMED.
BARFIELD and LAWRENCE, JJ., and SMITH, Senior Judge, concur.
NOTES
[1] The Court treats the petition and response as a complaint and answer. Therefore, the court will refer to the parties as the plaintiffs and the defendants.